## Liberty Bell Life Insurance Company v. Department of Insurance.

Argued May 3, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Walter R. Milbourne,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for appellant.

*Charles D. Cowley,* Assistant Attorney General, with him *Gerald Gornish,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, June 1, 1972:

This is an appeal from an adjudication of the Insurance Commissioner of Pennsylvania imposing upon

the appellant, Liberty Bell Life Insurance Company, a fine in the amount of Twenty-five Thousand Dollars ($25,000.00).

The fine was imposed pursuant to, and based upon the Commissioner's conclusion, after hearing, that the appellant had violated Section 354 of The Insurance Company Law of 1921, Act of May 17, 1921, P. L. 682, Article III, added by the Act of June 23, 1931, P. L. 904, §2, as amended, 40 P.S. §477(b), which in pertinent part provides:

"It shall be unlawful for any insurance company . . . doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance . . . or any other contracts of insurance, or use applications, riders, or endorsements, in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner. . . .

"Forms so filed . . . shall be deemed approved at the expiration of thirty (30) days after filing, unless earlier approved or disapproved by the Insurance Commissioner. . . .

"Such approval shall become void upon any subsequent notice of disapproval from the Insurance Commissioner. . . .

"Upon any disapproval, the Insurance Commissioner shall notify the insurer in writing, specifying the reason for such disapproval; and within thirty (30) days from the date of mailing of such notice to the insurer, such insurer may make written application to the Insurance Commissioner for a hearing thereon, and such hearing shall be held within thirty (30) days after receipt of such application. The procedure before the Insurance Commissioner shall be in accordance with the adjudication procedure set forth in the 'Administra-

tive Agency Law', and the insurer shall be entitled to the judicial review as provided for in said law.

"Any person, corporation, insurance company, exchange, order, or society that shall, either as principal or agent, issue, or cause to be issued, any policy or contract of insurance within the Commonwealth, contrary to this section, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500.00).

"Upon satisfactory evidence of the violation of this section by any such person, corporation, insurance company, exchange, order, or society, the Insurance Commissioner may, in his discretion, pursue any one or more of the following courses of action: (1) Suspend or revoke the license of such offending person, corporation, insurance company, exchange, order or society; (2) refuse, for a period of not to exceed one year thereafter, to issue a new license to such person, corporation, insurance company, exchange, order, or society; (3) impose a fine of not more than one thousand dollars ($1,000.00) for each and every act in violation of this act. . . ."

The Notice of Hearing by which the appellant was summoned before the Commissioner, charged appellant with numerous violations of The Insurance Company Law of 1921, 40 P.S. 341, *et seq.*, and of The Insurance Department Act of One Thousand Nine Hundred and Twenty-one, Act of May 17, 1921, P. L. 789, 40 P.S. §1, *et seq.*, in addition to the alleged violation of Section 354 of the former. The adjudication concludes that the appellant in fact did violate these laws in several respects. However, all of said violations are punishable as misdemeanors and none are the occasion for fine imposed by the Commissioner. For this reason, the Insurance Department has not briefed for us any matters concerning said alleged violations. Never-

theless, it is relevant to our consideration of the question of whether the adjudication of violation of Section 354 is supported by substantial evidence to note that the Commissioner's conclusion that all save one of these additional violations did occur rests upon a highly technical view not only of appellant's conduct but also of the law. For example, the Commissioner found two violations of Section 502(f) of The Insurance Department Act, 40 P.S. §202(f), proscribing wilful violation of charter powers and two violations of Section 320 of The Insurance Company Law, 40 P.S. §443, requiring the filing of truthful reports, in the fact that a J. Gilbert Brown, appellant's principal stockholder and president, put a sum totaling about Twelve Thousand Dollars ($12,000.00) into the appellant company from funds earned by him individually as an insurance consultant. These contributions were shown on appellant's reports furnished the Department as "consulting fees." Although there was no evidence whatsoever in the record that anyone other than Mr. Brown did the consulting the Commissioner concluded that in fact the company had performed consulting work, ultra vires its charter. On the same facts, the Commissioner further found two instances of false reporting because the company called these receipts "consulting fees" when in fact the consulting was done by Mr. Brown. The Commissioner further found twenty-two violations of the laws of the Commonwealth by reason of the late filing with Commonwealth revenue authorities of corporate tax returns, on which no tax was in fact due. The Commissioner found a violation of Section 205 of The Insurance Company Law, 40 P.S. §385, prohibiting the issuance of capital stock without payment therefor in lawful money, although the fact that the said stock was to be issued in pursuance of a plan for increasing the assets of the appellant was disclosed to the Depart-

ment and despite the fact that the shares were subsequently cancelled at the demand of the Department. As noted, we mention these matters in order to place in perspective the Department's apparent contention that we should affirm its adjudication, fining this troubled company Twenty-five Thousand Dollars ($25,-000.00), although the Department's proofs of a violation of Section 354 are inadequate.

On the sole issue here of whether the adjudication that the appellant company violated Section 354 of The Insurance Company Law by issuing policies not approved by the Department is supported by substantial evidence, we deem the following facts relevant: In September 1967, J. Gilbert Brown acquired 99% of the stock of the appellant company from the trustees of a bankrupt corporation. At that time there existed a deficiency in the company's capital. Representatives of the Insurance Department and Mr. Brown met for the purpose of agreeing upon an arrangement whereby the company could continue business by the provision of additional assets. With the full knowledge and understanding of Department representatives, Mr. Brown put Fifty Thousand Dollars ($50,000.00) in cash in the company and supplied it with a note in the amount of Two Hundred and Twenty Thousand Dollars ($220,-000.00) of two other corporations which he owned or controlled. This note incidentally had been reduced to the principal amount of Sixty-six Thousand Dollars ($66,000.00) when the hearing before the Commissioner took place and we understand now has been paid in full. The Department insisted, however, that the note should be appraised by the Committee on Valuation of Securities of the National Association of Insurance Commissioners. There was a delay in the receipt of the appraisal, whether due to the fault of the National Association of Insurance Commissioners or Mr. Brown is

not clear. As the result of the delay the Department on October 7, 1969, wrote to the appellant as follows: "Our Department cannot allow you to write any new policies for Liberty Bell Life Insurance Company until such time as an appropriate valuation is given to the aforementioned note." Thereafter, and between October 7, 1969 and April 22, 1970, Robert Lee Pontiac, Inc., as a purported agent of the appellant company, sold and delivered eighty-eight policies of credit life insurance. These were all single premium policies ranging in premium from a high of about $90.00 for an approximate $4,000 of such insurance to a low premium of about $5.00 for insurance of $600.00. The policies were issued on a form called GCL-10. Neither these policies nor a copy of form GCL-10 were introduced into this record by the Department.

If the issue before us was that of whether there was a violation of the Department's order to cease issuing policies, we might be required to support the Department. That is not, however the issue. By Section 354 of The Insurance Company Law 40 P.S. §447(b), under which alone may a fine be imposed by the Commissioner, the offense required to be proved is the issuance or sale of policies on forms not approved by the Commissioner.

The Department made some attempt to show that GCL-10 had never been approved by the Commissioner. Correspondence introduced at the hearing, and not necessary here to describe, shows very clearly that the Commissioner did approve form GCL-10 in the year 1965. Nor is there anything in this record indicating any disapproval of that form between that date and January 1, 1970.

Of the eighty-eight policies, forty-six were sold after January 1, 1970. The Department contends that the issuance of each of these forty-six policies was a violation

of Section 354 and depends for support upon its Regulation No. 24, Chapter No. 1, Series 100, promulgated about November 14, 1969. This Regulation provided, *inter alia,* that all policies delivered or issued for delivery on or after January 1, 1970, and their accompanying schedule of premium rates should be first filed with and approved by the Commissioner, and further, that all policies issued or delivered on or after January 1, 1970, should conform to the provisions of that new Regulation. The Commissioner concluded that since the appellant failed to prove that its GCL-10 did conform to the new regulation and because that form was used by the appellant after January 1, 1970, without its having been approved by the Commissioner, the appellant was guilty of issuing policies upon unapproved forms. The record supports no such conclusion. GCL-10 was not put in the record and there is no other evidence that it does not in fact conform to all of the requirements of Regulation No. 24. More importantly, there is no evidence in the record that the Insurance Commissioner ever notified the appellant in writing of the disapproval of form GCL-10, as required by Section 354. The imposition of a fine of Twenty-five Thousand Dollars ($25,000.00) cannot be supported by the argument that the appellant must have known of the new regulation simply because it was in the business. The statute provides first, that a prior approval becomes void only upon subsequent notice of disapproval and second, that notice of such disapproval must be given to the insurer in writing. After argument and in response to a request for a copy of Regulation 24, the Department additionally supplied us with a copy of a mimeographed notice, not of record, addressed to "All Insurance Companies." *This notice* does not expressly disapprove any form then in effect; it gives notice only that policies issued after January 1, 1970,

must conform to the new regulation. Even were this a sufficient notice that existing, approved forms were thereby disapproved, we cannot *assume* that it was sent to the appellant.

Section 354 is penal and, therefore, subject to strict construction. *See State Real Estate Commission v. Farkas*, 1 Pa. Commonwealth Ct. 134, 274 A. 2d 238 (1971). It requires a written notice of disapproval of forms in use. Why the Department did not include such disapproval in its broadcast notice is as incomprehensible to us as its failure in this case to prove that this or any notice disapproving GCL-10 was sent to the appellant.

### ORDER

AND NOW, to wit, this 1st day of June, 1972, the appeal of Liberty Bell Life Insurance Company is sustained and the Insurance Commissioner's adjudication made January 4, 1972, is set aside.